UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

DAVID A. BYTHEWOOD, PRO SE,

                                Plaintiff,           25-cv-

         -v-

                                                **COMPLAINT**

RHONDA FISCHER, a justice of the Supreme
Court of the State iof New Yrk in and for the
County of Nassau                             Jury Trial Demanded

                                 Defendants.

------------------------------------------------------------------x

The plaintiff, David A. Bythewood, complains of the defendants as follows:

## PRELIMINARY STATEMENT

1. "...It is axiomatic that this court is bound by the decisions of the Appellate Division,,, unless same has been overturned by the Court of Appeals." Carroll v. Trump, 2020 N.Y. Misc LEXIS 4182, 2020 NY Slip Op 32571(U) (Supreme Court, New York County 2019). This being the case, the Supreme Court of the State of New York lacks jurisdiction to overrule, reverse or vacate any Appellate Division of the Supreme Court of the State of New York unless that Appellate Division decision has been overruled by the New York State Court of Appeals.

2. "It is well settled that, until a decision of this Court is modified or reversed by a higher court, . . . the trial court is bound by our decision, regardless of whether our decision was correctly decided" Delgado v City of New York, 144 A.D.3d 46, 38 N.Y.S.3d 129, 2016 N.Y. App. Div. LEXIS 6070, 2016 NY Slip Op 06185 (1st Dept. 2016).

3. "Our prior decision... is the law of the case until modified or reversed by a higher court, and the trial court is bound by our decision" Lancaster Silo & Block Co. v. Northern Propane Gas Co., 75 A.D.2d 55,427 N.Y.S.2d 1009, 1980 N.Y. App. Div. LEXIS 10872 (4TH Dept. 1980) citing. Bolm v Triumph Corp., 71 AD2d 429, 434 (4th Dept 1979); 10 Carmody-Wait 2d, NY Prac, § 70:453; Siegel, NY Prac, § 448; cf. Knorr v City of Albany, 58 AD2d 904(3rd Dept. 1977); Trybus v Nipark Realty Corp., 26 AD2d 563 (2nd Dept 1966); see, also, McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C203:11, pp 121, 124).

4. "The trial court to which the action had been remitted for trial had no jurisdiction to review even for apparent errors matters that had already been decided by the appellate court." Enthoven v. Enthoven, 259 A.D. 231, 232-233, 18 N.Y.S.2d 863, 1940 N.Y. App. Div. LEXIS 6103 (1st Dept 1940), citing, Hornstein v. Podwitz, 229 App. Div. 167; affd., 254 N. Y. 443 (1930).

**5**. "A trial court ... has no jurisdiction to review matters decided by the appellate court." <u>Goldenberg v. New York</u>, 351 N.Y.S.2d 443, 444 (2d Dept. 1974) *citing* <u>Hornstein v. Podwitz</u>, 229 App. Div. 167, affd. 254 N.Y. 443 (1930).. "An appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court, as well as on the appellate court... [and] operates to foreclose reexamination of [the] question absent a showing of subsequent evidence or change of law." <u>Kenney v. City of New York</u>, 74 A.D.3d 630, 903 N.Y.S.2d 53, 2010 N.Y. App. Div. LEXIS 5356, 2010 NY Slip Opp 5466 (1st Dept 2010) *quoting* <u>J-Mar Serv. Ctr., Inc. v. Mahoney, Connor & Hussey</u>, 45 A.D.3d 809, 809, 847 N.Y.S.2d 130, (2d Dept. 2007). See <u>Martin v. City of Cohoes</u>, 37 lkjhN.Y.2d 182, 332 N.E.2d 867, 371 N.Y.S.2d 687 (1975). See also, <u>Matter of Ruth S.</u>, 2025 N.Y. App. Div. LEXIS 3093, *6, 2025 NY Slip Opp 89188 (2d Dept. 2025). So, relitigation of the order that discovery had to be completed was and is barred. <u>Matter of Koegel</u>, 184 A.D.3d 764, 126 N.Y.S.3d 153, 2020 N.Y. App. Div. LEXIS 3503, 2020 NY Slip Opp 03415 (2d Dept. 2020).

**6**. "Judicial immunity may only be overcome where ... (2) the acts,'though judicial in nature, [were] taken in the complete absence of all jurisdiction." <u>Bythewood v. New York</u>, 2022 U.S. Dist. LEXIS 180011, 2022 WL 4661568 (U.S. Dist Court, EDNY 2022).

7. The United States Constitution guarantees to all litigants an impartial/unbiased/neutral judge. "The participation of an independent, unbiased adjudicator in the resolution of disputes is an essential element of due process of law, guaranteed by the Federal and State Constitutions," General Motors Corporation - Delco products Div. v. Rosa, 82 N.Y.2d 183, 604 N.Y.S.2d 14 (November 11, 1993) *citing* (see, U.S. Const., 14th Amend., § 1; N.Y. Const., art I, § 6; see also, Matter of 1616 Second Ave. Rest. v. New York State Liquor Auth., 75 N.Y.2d 158, 161, 551 N.Y.S.2d 461, 550 N.E.2d 910; *Reddish and Marshall,* Adjudicatory Independence and the Values of Procedural Due Process, 95 Yale LJ 455, 475-505 [1986]. The New York State Court of Appeals determined that a New York State judge lacked any jurisdiction to deny any litigant an impartial judge when it held that: "By interposing herself..., petitioner abandoned her role as neutral arbiter... This is completely incompatible with the proper role of an impartial judge." Matter of Blackburne, 7 NY3d 213 (2006). Thereafter and as a consequence of her biased acts, that judge was stripped of every aspect of her judicial status so that she was no longer a New York State judge. She was terminated as a member of the judiciary and permanently removed from the bench because she intentionally refused to be an impartial adjudicator as required by the United States Constitution. And, on impartiality, "One meaning of impartiality in the judicial context – and of course its root meaning – is the lack of bias for or

against either party to the proceeding. Impartiality in this sense assures equal protection of the law. That is, it guarantees a party that the judge who hears his case will apply the law to him in the same way he applies it to any other party." Republican Party v. White, 536 U.S. 765, 775, 122 S.Ct. 2528, 2535, 153 L.Ed2d 694 (2002).

The Parties

**8**. The Plaintiff is David A. Bythewood is an individual who resides in the Eastern District of New York who is an officer of the Court.

**9**. The Defendant is Rhonda Fischer an individual who resides in the Eastern District of New York and who is a justice of the Supreme Court of the State of New York, in and for the County of Nassau, who, knowingly and without any jurisdiction, intentionally and maliciously acted to inflict damage upon and did, in fact, inflict damage upon Plaintiff, for the sole and biased purpose of illegally benefitting HSBC, in as said foreclosure action known as HSBC v. Arias, Garcia and David A. Bythewood, in which foreclosure action Plaintiff is not and was never a debtor. These unequivocally biased, unconstitutional and improper actions, of Defendant Rhonda Fischer, were also for the purpose of knowingly, intentionally and maliciously damaging Plaintiff, a defendant in that foreclosure action and the Plaintiff in this action. Defendant Rhonda Fischer committed these bad acts so that she could, obviously, with improper bias, illegally bestow upon,

benefit and please HSBC for hidden reasons, apparently known only to her and HSBC. Said hidden reasons on their face smacked of nothing less than corruption. And, in addition to her actions being incredibly and obviously biased with the intent of causing such damage and actually causing such damage, they were in violation of the United States Constitution as well as the laws of the State of New York. Defendant, **Rhonda Fischer** is hereinafter referred to as **"Trial Court Judge"**.

## JURISDICTION AND VENUE

10. Jurisdiction over the defendants arises under the United States Constitution and federal statutes, thus jurisdiction is invoked pursuant to 28 U.S.C. 1331.Venue in this court is proper pursuant to 28 U.S.C. 1391.

11. The jurisdiction of this court is invoked under the provisions of Title 28 U.S.C. §§ 1331, 1343, 1367 and 28 U.S.C.A. 342(a)(3) and (4).

12. Venue is placed in this district because of where all the parties reside and/or where the events complained of occurred.

13. That which subjected and subjects this defendant, a trial court judge, to not be protected by judicial immunity is to the fact that notwithstanding her absence of all jurisdiction to adjudicate and reverse the Appellate Division: Second Department of the Supreme Court of the State of New York, that is precisely what she did.

## FACTS LEADING UP TO AND THE DECISION
## OF THE SUBJECT APPELLATE DIVISION

14. The subject foreclosure action presided over, in the New York Supreme Court in and for the County of Nassau, by the **Trial Court Judge**, is: HSBC Bank, N.A. v. Joaquin Arias, Asia Garcia and David A. Bythewood, It has Nassau County Clerk index number 13282/2009 (hereinafter, the "**Trial Court action**".

### Relevant Historical Facts of the Trial Court action

15. The Trial Court action was commenced in 2009. Its foundation started at the closing, in 2007, (the "**Arias Closing**"), at which closing Joaquin Arias acquired the premises known as 459 Magnolia Blvd, Long Beach, New York (hereinafter the "**Premises**"), from his sister Asia Garcia with purchase money funds that he borrowed from the then lender Delta Funding.

`16. At the **Arias Closing**, a partly hand written deed, prepared by the title closer in attendance that conveyed the **Premises** from Asia Garcia, as the party of the first part, to Joaquin Arias as the party of the second part that was signed by Asia Garcia, **Exhibit** 1. The title closer at the Arias Closing was from **Junction Abstract**, as agent of Commonwealth Title Insurance Company.  Proof of this was is highlighted in the relevant exhibits.

17. Concurrently, at that **Arias Closing** and in the presence of the Delta Funding representatives who attended that closing, that very same **Junction**

**Abstract** title closer prepared a second deed that conveyed title to the **Premises** from Joaquin Arias, as the party of the first part, to Joaquin Arias and Asia Garcia, as the party of the Second part.  **Exhibit 2**. The consequence of the second deed was to convey back to Asia Garcia a tenant in common interest in the **Premises**.

17. At the **Arias Closing**, only Joaquin Arias and no other person signed a mortgage at the **Arias Closing**. A copy of that mortgage is attached hereto as **Exhibit 3**. As can be seen by this exhibit, Asia Garcia did not sign this mortgage.

18. The **Junction Title** title closer, at the **Arias Closing**, whose responsibility included marking the relevant **Arias Closing** documents for identification with the title number **JK1998** and then picking them up so that the said **Junction Title** title closer could file all of those title number **JK1998**  marked documents with the Nassau County Clerk and then filing them, with the Nassau County Clerk did, in fact, mark all of those documents with title number **JK1998** and then filed all of them, with that title number, **JK1998**, in a single package, at the same time, with the Nassau County Clerk. That title number, **JK1998** was and is, in fact the title number for title insurance policy issued for the title to the **Premises** at the **Arias Closing**. An examination of **Exhibits 1, 2 and 3** shows to this court and to all who would investigate that covered by the title insurance policy for the **Arias Closing** documents will see the had written title number,

**JK1998**, on each of those documents and, on further examination and also highlighted, will see that on a title company printed page attached to the two deeds, **Exhibits 1 and 2**, that, in fact, **JK1998** is and was, at all times, the relevant title number.

19. Later and prior to the commencement of the **Trial Court Action**, David A Bythewood, the Plaintiff here, examined the **Arias Closing** documents that had been filed with the Nassau County Clerk by **Junction Abstract** and based on those documents and the representations of Joaquin Arias and Asia Garcia saw that the tenant in common interest of Asia Garcia in the **Premises** had never been encumbered by any mortgage. Consequently, Plaintiff, for value, acquired from Asia Garcia her tenant in common interest in the **Premises**. **Exhibit 4**. And because neither Asia Garcia, Joaquin Arias nor HSBC had paid any of the real property and/or school taxes assessed against the premises, Plaintiff paid all of those taxes and, in addition, any other outstanding municipal charges. He also offered to acquire the interest of HSBC in the premises, based on actual value. HSBC never responded to that offer.

20. In 2009, HSBC commenced the above referenced **Trial Court Action** to foreclose on the mortgage, **Exhibit 3**, that had been signed by Joaquin Arias at the **Arias Closing**.

21.  In its complaint for the **Trial Court Action**, HSBC alleged that Plaintiff had fraudulently acquired the tenant-in-common interest of Asia Garcia which allegation was held to be frivolous by the Supreme Court Justice who succeeded the Hon. Thomas A. Adams after he retired, the Hon. Julianne Capetola. **Exhibit 5.**

22. HSBC, in the Trial Court Action, moved for summary judgment and the defendants cross moved for summary judgment declaring that the tenant-in-common interest of was never encumbered, etc., using the affidavits of Joaquin Arias and Asia Garcia as well as the affirmation of Plaintiff and **Exhibits 1, 2 and 3**. Using this, the defendants also opposed the summary judgment motion of HSBC.

23. HSBC, to reply to this said opposition and cross motion failed to submit even one iota of evidence that contradicted or, in any way, even, in any way, tended to disprove that set forth in the cross motion of the defendants or the opposition of the defendants to HSBC's then motion for summary judgment. Because of this, the Hon. Thomas A. Adams, then presiding over the **Trial Court Action**, denied both the motion of HSBC for summary judgment and the cross motion of the defendant for summary judgment and held that: *"What Transpired at the closing on June 26, 2007 and whether Asia Garcia's interest in the property is encumbered by the subject mortgage involves factual issues which*

*cannot be resolved on the papers before the Court at this time and must await discovery proceedings".* **Exhibit 6**. By this decision of the Hon. Thomas A. Adams that constituting the Law of the Case doctrine was established. *"The doctrine of law of the case is essential to an orderly and seemly administration of justice in a court composed of several judges. Violation of the doctrine is a breach of comity which, if sanctioned, could only lead to unseemly conflicts of decision and to protracting the litigation... When there is an appeal from an order which is found to have been made in violation of the doctrine of law of the case, the Appellate Division may properly reverse it for that reason alone. "* <u>Post v. Post</u>, *141 A.D.2d 518, 529 N.Y.S.2d 341 (2nd Dept 1988). "The doctrine of law of the case is a rule of practice, an articulation of sound policy that, when an issue is once judicially determined, that should be the end of the matter as far as judges and courts of coordinate jurisdiction are concerned.* <u>U.S. Bank, NA v. Tenenbaum</u>, *228 A.D.3d 696, 698, 213 N.Y.S,3d 123, 127 (2nd Dept. 2024).* However, even though important, at this point, it this was not the determination of a higher court and is not the basis for this action. So, at this point for this action it is not relied on.

24. Because HSBC would not cooperate with discovery and because the Hon Thomas A. Adams ordered discovery to be completed the defendants served a Notice of Discovery and Inspection on HSBC. **Exhibits 7**. Its purpose, in light of

the facts that HSBC failed to oppose with any proof whatsoever that was to cause HSBC to respond by admitting that it had no defense to the fact that the tenant-in-common interest of Asia Garcia was never encumbered.

25. More than a year passed and HSBC, during that time either failed or refused to respond to and comply with that Notice of Discovery and Inspection. Then there was a new motion and cross motion and both were for summary judgment. HSBC's motion was supported by the identical proof that it had used in its first motion for summary judgment that had been denied as identified in paragraphs 22 and 23 herein above. This said second motion for summary judgment of the defendants also relied on its same proof as in its first motion for summary judgment, as described in paragraphs numbered 22 and 23 above, but also included the never responded to Notice of Discovery and Inspection that the defendants had served on HSBC a copy of which is attached hereto as **Exhibit 7**. Because HSBC's second motion for summary judgment, as its proof, relied on the exact same proof used in its first motion for summary judgement with nothing new, that, in itself, triggered the rule against successive summary judgment motions. Because there was no showing of newly discovered evidence or other sufficient cause, HSBC's second motion for summary judgment should was an improper successive summary judgment motion. U.S. Bank Trust N.A. v. Green-Stevenson, 208 A.D.3d 1205, 175 N.Y.S.3d 101, 2022 N.Y. App. Div.

LEXIS 5054 (2nd Dept 2022). However, even though important, at this point, it this was not the determination of a higher court and is not the basis for this action. So, at this point for this action it is not relied on.

26. The Hon. Thomas A. Adams denied both of these second motions for summary judgment and incorporated by reference the very same reason to deny these motions for summary judgment that he had used to deny the initial summary judgments by reference. **Exhibit 8**.

27. Because the second summary judgment motion of the defendants included the new evidence of that said not responded to Notice of Discovery and Inspection served on HSBC, the defendants appealed to the Appellate Division: Second Department. That appeal was denied by the Second Department holding that the appeal was premature because discovery had not been completed as had been twice ordered by Trial Court presiding justice, the Hon. Thomas A. Adams and that it was necessary to complete discovery. **Exhibit 9**. By this decision, the Appellate Division: Second Department adopted the law of the case that had been twice established by the Hon. Thomas A. Adams which caused that Law of the Case of the Hon. Thomas A. Adams, that summary judgment was premature until after discovery had been completed, to become the Law of the Case of the Appellate Division: Second Department by which the **Trial Court Judge** was bound and had no jurisdiction of any kind to review, change, modify, overrule,

reverse or vacate.

28. Thereafter, in November of 2012, pursuant to a stipulation that is not relevant here, the parties agreed to certify the **Trial Court Action** for trial, signed a Certification order that was then "So Ordered" by the Hon. Thomas A. Adams that required HSBC to file a Note of Issue within 90 days of that order which, if not done, would result in the complaint for the **Trial Court Action** being dismissed without any further action of the court. HSBC defaulted without any excuse by failing to timely file a Note of Issue, with no excuse, and the complaint for the **Trial Court Action** was dismissed in February of 2013. HSBC did nothing for almost five years. During that time the Hon. Thomas A. Adams retired and was succeeded by the Hon. Julianne Capetola. Then, more than four years and eight months after defaulting without any excuse, which caused the dismissal of the foreclosure complaint for the **Trial Court Action**, HSBC moved to vacate that default even though that default was without and excuse. That motion was denied by the Hon. Julianne Capetola because HSBC had no excuse for its default. Thereafter, HSBC appealed to the Appellate Division: Second Department. The Appellate Division: Second Department, notwithstanding the requirements of C.P.L.R. 5015(a)(1) that required to vacate a default that it be an excusable default, vacated HSBC's default that had no excuse and restored the **Trial Court Action** to the calendar. Years passed with no action by HSBC even though the

**Trial Court Action** had been restored to the calendar until a time after the **Trial Court Judge** became the presiding judge presiding over the **Trial Court Action**.

29. After the **Trial Court Judge** became the judge presiding over the **Trial Court Action**, HSBC moved a third time for summary judgment and, again, did so using only the very identical proof that it had used in its first two motions and nothing else. Again, HSBC's third motion for summary judgment was a not permitted because it was a successive summary judgment motion and was barred by the Law of the Case established by the orders of the Hon. Thomas A. Adams, **Exhibits 6 and 8**, as well as the Law of the Case established by the Appellate Division: Second Department in its decision, **Exhibit 9**.

30. The defendants opposed and cross moved and in that specifically pointed out to the **Trial Court Judge**, all of that above including making very specific opposing reference to **Exhibits 1, 2, 6, 7, 8 and 9**.

31. Notwithstanding all that the defendants had put before the **Trial Court Judge**, that gave to her full notice of the Appellate Division: Second Department decision, **Exhibit 9**, that was the Law of the Case that she had no jurisdiction to review, modify, overrule, reverse or vacate, the Trial Court Judge issued and order, **Exhibit 10**, that vacated that decision of the Appellate Division: Second Department, **Exhibit 10**.

32. It did not matter to the **Trial Court Judge** that by law she was fully bound by the ruling of the Appellate Division: Second Department that summary judgment was premature because discovery had not been completed and that the completion of discovery was necessary. This because the **Trial Court Judge** had the intent to deliver to HSBC summary judgment no matter what the law had to say.

33. It did not matter to the Trial Court Judge that she lacked any jurisdiction to vacated the decision of the Appellate Division: Second Department, she did so by the order that she issued, **Exhibit 10**, notwithstanding her lack of jurisdiction to do so.

34. The Trial Court Judge had been a judge in Nassau County, New York for many years and was well aware of the fact that she was bound by the decisions of the Appellate Division: Second Department and that she lacked any jurisdiction to review, modify, overrule, reverse or vacate any decision of the Appellate Division: Second Department. In this instance what she was bound by and that she lacked any jurisdiction did not matter to her.

35. The **Trial Court Judge** issued her illegal order, **Exhibit 10**, that was illegal because she made it without any jurisdiction to do so and without any impartiality, because it was her intent to intentionally knowingly grant to HSBC summary judgment and to knowingly and intentionally do great damage to the

Plaintiff, no matter the consequences. The law did not matter to the **Trial Court Judge** nor did her oath, nor did the United States Constitution nor did the fact that she lacked any jurisdiction, and she did so knowing that what she was doing lacked any vestige of impartiality.

36. And, when this **Trial Court Judge** vacated the decision of the Appellate Division: Second Department, she did so in violation of the United States Constitution and in violation of the laws of the Sate of New York and all aspects of New York's Rules of Judicial Conduct just so that she could grant to HSBC an extremely biased summary judgment and to knowingly and intentionally deny to Plaintiff the impartial adjudicator that he was entitled to by the guarantee of the United States Constitution. This the **Trial Court Judge** did to knowingly and intentionally place herself above the very law that she was sworn to administer. It did not matter, at all, to her, that she brought the judiciary into disrepute and undermined public confidence in the integrity, and impartiality of her court.

37. But the **Trial Court Judge**, after her receipt of emails from the attorneys for HSBC decided that he illegal order, **Exhibit 10**, was not strong enough. So she vacated that order, **Exhibit 10**, and issued a replacement order, **Exhibit 11**, that was also vacated, **Exhibit 9**, the decision of the Appellate Division that was done equally without jurisdiction and without any vestige of impartiality.

38. What the **Trial Court Judge** did to make her replacement order, **Exhibit 11**, stronger was to fabricate false facts that she inserted into that order to intentionally and knowingly do further and greater damage to the Plaintiff.

39. Time passed and HSBC moved for an order of foreclosure and sale. Those defendants cross moved in the interest of justice for the **Trial Court Judge** to vacate her order, that was made without any jurisdiction, that vacated the decision of the Appellate Division: Second Department that is attached hereto as **Exhibit 9**. This gave to the **Trial Court Judge** an opportunity to undo her act that was knowingly and intentionally without any jurisdiction. The **Trial Court Judge** ignored this opportunity and granted the judgment of foreclosure and sale for the sole purpose of doing damage to the Plaintiff. The contempt of the law by the **Trial Court Judge** is without question by her vacating the decision of the Secnd Department, **Exhibit 9**, without any jurisdiction, by her ignoring, improperly rejecting, and flying in the face of the law of "Law of the Case" and the "Rule Against Successive Summary Judgment Motions" just to maliciously damage the Plaintiff and to benefit, without any justification, her friend and collaborator, HSBC. And notwithstanding the Law of the Case established by two (2) prior orders of the Hon. Thomas A. Adams and the decision of the Appellate Division: Second Department all that required discovery to be completed before any motion for summary judgment could be made and that her friend and collaborator had

failed to do any discovery. And, worse, even though her friend and collaborator, HSBC, had refused to respond to that Notice of Discovery and Inspection, **Exhibit 7**, for more than ten (10) years she ordered that her friend and collaborator, HSBC, did not have to respond to that Notice of Discovery and Inspection and fraudulently fabricated facts that did not exist and that were snot supported by anything in order to maliciously damage the Plaintiff.

40. The **Trial Court Judge** refused to vacate her order that vacated the decision of the Appellate Division: Second Department even though her said order was made without any jurisdiction. Instead the Trial Court Judge granted HSBC's motion and refused to even consider the cross motion. In doing this, by reference, the Trial Court Judge restated her order tat vacated the decision of the Appellate Division: Second Department.

41, The acts and omissions of the **Trial Court Judge** had the effect of damaging the Plaintiff to such an extent that from the time of her acts the Plaintiff could no longer enjoy any aspect of life.

42. The acts and omissions of the **Trial Court Judge** caused the Plaintiff to be constantly under a state of seige.

43. The acts and omissions of the **Trial Court Judge** placed the Plaintiff in a constant state of fear for many reasons including, but not limited to, being able to rely on the law or having an impartial adjudicator.

44. The acts and omissions of the **Trial Court Judge** placed the Plaintiff in a constant state of fear for many reasons including, but not limited to, being able to rely on the equal protection or due process.

45. The acts and omissions of the **Trial Court Judge** placed the Plaintiff in a constant state of fear for many reasons including, but not limited to, judges, not corruptly entering into or appearing to corruptly enter into illegal conspiracies.

46. The acts and omissions of the **Trial Court Judge** placed the Plaintiff in a constant state of fear for many reasons including, but not limited to, being able to rely on the United States Constitution and it being the Supreme law of the United States of America..

47. The United States Constitution and the law did not and does not matter to the Trial Court Judge. She, as set forth herein, placed herself above the law, placed herself above the United States Constitution and above the requirements of judicial conduct.

48. This Trial Court Judge acted without jurisdiction or impartiality and violated the United States Constitution's guaranty of an impartial adjudicator solely for the purpose of damaging the Plaintiff.

49. The United States Constitution is the supreme law of the United States of America.

50. This is the Supremacy Clause of the United State Constitution: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

51. The United States Constitution Guarantees to all citizens of the United States of America an impartial adjudicator.

52. The United States Constitution Guarantees to all citizens of the United States of America equal protection under the law.

53. The United States Constitution Guarantees to all citizens of the United States of America due process under the law.

54. The United States Constitution Guarantees to all citizens of the United States of America the right to be able to rely on the law. "This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration. See, e.g., _Carcieri v. Salazar_, 555 U. S. 379, 387, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009); _Connecticut Nat. Bank v. Germain_, 503 U. S. 249, 253-254, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992); _Rubin v. United_

*States*, 449 U. S. 424, 430, 101 S. Ct. 698, 66 L. Ed. 2d 633 (1981)." Bostock v.

Clayton Cnty, 590 U.S. 644, 653, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020).

55. The plaintiff is a citizen of the United States of America, an officer of

the Court and an honorably discharged veteran of the United States of America.

56. The Trial Court Judge nothing but is a politician who has never served

this country.

57. This law suit is that referred to as de facto checks and balances, required

by the founders, to keep the judiciary in check when it acts without any

jurisdiction.

## AS AND FOR A FIRST CAUSE OF ACTION

58. All of the allegations that are set forth in this complaint from paragraph

numbered 1 through and including paragraph numbered 57 are repeated here as if

set forth here at length.

59. The Trial Court Judge knowingly and intentionally acted without any

jurisdiction for the purpose of depriving Plaintiff of his right to an impartial

adjudicator so that she could, act outside the law, to illicitly deliver to her apparent

friend HSBC summary judgment and an order of foreclosure and sale to HSBC.

60. By her actions and omissions the Trial Court Judge, when she acted

without any jurisdiction, damaged the Plaintiff by acting without any jurisdiction

in order to knowingly and intentionally damage the Plaintiff by acting without any

jurisdiction so that she could violate the Plaintiff's guaranteed rights that are guaranteed by the United States Constitution.

61. By her actions and omissions the Trial Court Judge damaged the Plaintiff in an amount that is greater than Two Million dollars.

62. The Plaintiff demands that this court award to him damages in an amount to be determined at trail that is greater than Two Million Dollars.

63. The plaintiff demands punitive damages in the amount of Two Billion Dollars.

## AS AND FOR A SECOND CAUSE OF ACTION

64. All of the allegations that are set forth in this complaint from paragraph numbered 1 through and including paragraph numbered 57 are repeated here as if set forth here at length.

65. The Trial Court Judge knowingly and intentionally acted without any jurisdiction for the purpose of depriving Plaintiff of his right to equal protection so that she could, act outside the law, to illicitly deliver to her apparent friend HSBC summary judgment and an order of foreclosure and sale to HSBC.

66. By her actions and omissions the Trial Court Judge, when she acted without any jurisdiction, damaged the Plaintiff by acting without any jurisdiction in order to knowingly and intentionally damage the Plaintiff by acting without any jurisdiction so that she could violate the Plaintiff's guaranteed rights that are

guaranteed by the United States Constitution.

67. By her actions and omissions the Trial Court Judge damaged the Plaintiff in an amount that is greater than Two Million dollars.

68. The Plaintiff demands that this court award to him damages in an amount to be determined at trail that is greater than Two Million Dollars.

69. The plaintiff demands punitive damages in the amount of Two Billion Dollars.

AS AND FOR A THIRD CAUSE OF ACTION

70. All of the allegations that are set forth in this complaint from paragraph numbered 1 through and including paragraph numbered 57 are repeated here as if set forth here at length.

71. The Trial Court Judge knowingly and intentionally acted without any jurisdiction for the purpose of depriving Plaintiff of his right to due process so that she could, act outside the law, to illicitly deliver to her apparent friend HSBC summary judgment and an order of foreclosure and sale to HSBC.

72. By her actions and omissions the Trial Court Judge, when she acted without any jurisdiction, damaged the Plaintiff by acting without any jurisdiction in order to knowingly and intentionally damage the Plaintiff by acting without any jurisdiction so that she could violate the Plaintiff's guaranteed rights that are guaranteed by the United States Constitution.

73. By her actions and omissions the Trial Court Judge damaged the Plaintiff in an amount that is greater than Two Million dollars.

74. The Plaintiff demands that this court award to him damages in an amount to be determined at trail that is greater than Two Million Dollars.

75. The plaintiff demands punitive damages in the amount of Two Billion Dollars.

AS AND FOR A FOURTH CAUSE OF ACTION

76. All of the allegations that are set forth in this complaint from paragraph numbered 1 through and including paragraph numbered 57 are repeated here as if set forth here at length.

77. The Trial Court Judge knowingly and intentionally acted without any jurisdiction for the purpose of depriving Plaintiff of his right to be able to rely on the law so that she could, act outside the law, to illicitly deliver to her apparent friend HSBC summary judgment and an order of foreclosure and sale to HSBC.

78. By her actions and omissions the Trial Court Judge, when she acted without any jurisdiction, damaged the Plaintiff by acting without any jurisdiction in order to knowingly and intentionally damage the Plaintiff by acting without any jurisdiction so that she could violate the Plaintiff's guaranteed rights that are guaranteed by the United States Constitution.

79. By her actions and omissions the Trial Court Judge damaged the

Plaintiff in an amount that is greater than Two Million dollars.

**80.** The Plaintiff demands that this court award to him damages in an amount to be determined at trail that is greater than Two Million Dollars.

**81.** The plaintiff demands punitive damages in the amount of Two Billion Dollars.

WHEREFORE, The plaintiff respectfully requests of this Court enter judgment in favor of the Plaintiff and against the Trial Court Judge:

For the First Cause of Action to award the plaintiff compensatory damages in an amount to be determined at trial that is greater than Two Million Dollars and, in addition, to award to the Plaintiff and against the Trial Court Judge punitive damages in the amount of Two Billion Dollars;

For the Second Cause of Action to award the plaintiff compensatory damages in an amount to be determined at trial that is greater than Two Million Dollars and, in addition, to award to the Plaintiff and against the Trial Court Judge punitive damages in the amount of Two Billion Dollars;

For the Third Cause of Action to award the plaintiff compensatory damages in an amount to be determined at trial that is greater than Two Million Dollars and, in addition, to award to the Plaintiff and against the Trial Court Judge punitive damages in the amount of Two Billion Dollars;

For the Fourth Cause of Action to award the plaintiff compensatory

damages in an amount to be determined at trial that is greater than Two Million

Dollars and, in addition, to award to the Plaintiff and against the Trial Court Judge

punitive damages in the amount of Two Billion Dollars;

and to further grant such other and further relief that to this court is just and

proper along with the costs and disbursements of this action.

Dated:        Garden City, New York
              November 13, 2025

David A. Bythewood, Esq., Pro Se
(DB 2814)

_____/S/_____
310 Old Country Road, Suite 204
Garden City, New York 11530
(516) 741-0066
dabytheesq@aol.com

To: Rhonda Fischer
    230 Fox Hunt Crescent
    Syosset, NY 11791-1708    .